IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CHRISTOPHER BEST, ) | CV. NO. 06-00634 DAE-KSC |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| PASHA HAWAII TRANSPORT ) | |
| LINES, L.L.C.; M/V JEAN ANNE, ) | |
| AND INTEROCEAN AMERICAN ) | |
| SHIPPING CORPORATION, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

ORDER DENYING PLAINTIFF'S MOTION TO COMPEL
DEFENDANT INTEROCEAN AMERICAN SHIPPING CORPORATION
TO PAY ADEQUATE MAINTENANCE AND CURE WITHOUT PREJUDICE

On May 6, 2008, the Court heard Plaintiff's Motion to Compel Defendant Interocean American Shipping Corporation ("IAS") to Pay Adequate Maintenance and Cure. Jason A. Itkin, Esq., appeared via telephone, and Della Belatti, Esq., appeared in person, at the hearing on behalf of Plaintiff; Cynthia A. Farias, Esq., appeared at the hearing on behalf of Defendant IAS. After reviewing the motion and the supporting and opposing memoranda, the Court DENIES Plaintiff's motion WITHOUT PREJUDICE.

## BACKGROUND

It is undisputed that Plaintiff was injured while working aboard the cargo sip M/V Jean Anne on April 18, 2006.  Plaintiff was employed at the time by Defendant IAS, a company which provides crew services for Defendant Pasha Hawaii Transport lines, the owner of the M/V Jean Anne.

Defendant was a member of the American Maritime Officers ("AMO"), a union which represents ship officers.  IAS and AMO have a collective bargaining agreement, dated August 26, 2004 (the "CBA").  The CBA provides in part that officers under legitimate outpatient treatment will be compensated "at a rate of $12.00 per day to be paid weekly."

It is undisputed that Plaintiff did not receive his first check for maintenance [1] until May 22, 2007, more than one year after he was injured.  It is also undisputed that more than three months passed before Plaintiff received a second payment for maintenance, which covered his payments through September 30, 2007.  The amounts of Plaintiff's checks were calculated based upon the $12.00 per day rate set forth in the CBA.

---

[1] In general, maintenance is compensation for room and board equivalent to what the seaman would have received aboard the vessel, and cure represents payments for medical treatment necessary to restore the seaman to health.

Plaintiff filed the instant lawsuit on November 27, 2006, and filed an amended complaint on January 29, 2008. In the amended complaint, Plaintiff alleges that Defendant failed to pay adequate maintenance and cure. Plaintiff filed the instant motion on February 28, 2008. (Doc. #56). It is undisputed that at the time Plaintiff filed the instant motion to compel maintenance, he had not received another payment since the second check, which had been issued approximately five months earlier. Defendant IAS filed its opposition on March 17, 2008.[2] Plaintiff did not file a reply brief.

---

[2] In their opposition, Defendant's counsel states that it is her understanding that on February 29, 2008, Plaintiff was paid for the period from October 1, 2007, through February 29, 2008, and that another check will be or has been mailed to cover maintenance for March and April 2008. Defendant's counsel also states that it is her understanding that there was a delay in payments to Plaintiff because Defendant IAS questioned the cause of injuries. Defendant's counsel, however, does not have personal knowledge of the facts to which she attests in her affidavit. Defendant's counsel should know that personal knowledge is required in order for the facts attested thereto to be considered by the court. See Fed. R. Civ. P. 56(e) ("affidavits shall be made on personal knowledge . . . and shall show affirmatively that the affiant is competent to testify to the matters stated therein."); LR 7.6 ("[a]ffidavits and declarations shall conform to the requirement of Fed. R. Civ. P. 56(e) . . . [and] [a]ffidavits and declarations not in compliance with the rule may be disregarded by the court."); see also Carrillo-Gonzalez v. I.N.S., 353 F.3d 1077, 1079 (9th Cir. 2003) (argument by counsel is not evidence). Accordingly, this Court will disregard her affidavit. In addition, at the hearing, Plaintiff's counsel stated that Plaintiff has not received any checks other than the two discussed above and he was last paid on September 30, 2007.

## STANDARD OF REVIEW

Neither party set forth a standard of review. District Courts in the Ninth Circuit have not been consistent in their treatment of motions for maintenance and cure. Some courts apply the summary judgment standard, even when the seaman is the moving party, while other courts have found that the summary judgment standard is inappropriate in such circumstances because it does not account for the flexible approach courts should take in admiralty law cases and the deference courts should provide to seamen. Compare Conners v. Iqueque, No. C05-334, 2005 WL 2206922, at * 2 (W.D. Wash. Aug. 25, 2005) (drawing all inferences in the light most favorable to the non-moving party "squares awkwardly with the Supreme Court's instructions to defer to seamen in determining maintenance and cure questions.") and Boyden v. Am. Seafoods Co., No. C99-1420R, 2000 WL 33179294 (W.D. Wash. March 21, 2000) (declining to apply a summary judgment standard to a motion for maintenance and cure because doing so "would invite litigation and . . . undermin[e] the simplicity in these matters") with Guerra v. Arctic Storm, Inc., No. C04-1010L, 2004 WL 3007097 (W.D. Wash. Aug. 4, 2004) (construing a motion for maintenance and cure as a motion for partial summary judgment) and Blake v. Cairns, No. C-03-4500 MJJ, 2004 WL 1857255 (N.D. Cal. Aug. 16, 2004) (holding that "if there is no dispute

of material fact, then the [maintenance] claim may be disposed of by summary judgment").

The Supreme Court has cautioned against "exceptions or conditions [that would] stir contentions, cause delays, and invite litigations" over maintenance and cure, Vell v. Ford Motor Co., 421 U.S. 1, 4 (1975), and that the court has a certain amount of additional flexibility when it exercises admiralty jurisdiction, see Putnam v. Lower, 236 F.2d 561, 568 (9th Cir. 1956).

This Court finds that it need not determine which standard of review is the appropriate standard at this juncture because there is no factual dispute that Plaintiff was entitled to maintenance and cure and that although he was paid, he was not paid on a weekly basis, as required in the CBA. Furthermore, the determination in this case turns on Plaintiff's failure to allege a statutory basis or other legal basis, outside of the CBA provisions, for weekly payments of maintenance, and Plaintiff's failure to allege that he exhausted the grievance procedure, neither of which are factual determinations that must be made in the light most favorable to a certain party.

## DISCUSSION

Plaintiff argues that under admiralty law, he is entitled to food and lodging of the quality that he would receive aboard ship, which under these

circumstances would be at a rate of at least $53.50 a day.  Plaintiff claims that because IAS has failed to satisfy its obligation under the CBA to pay maintenance on a weekly basis, it has breached the CBA and therefore, the daily rate of $12 set forth in the CBA is no longer applicable.

Defendant does not deny that its payments to Plaintiff were untimely and well outside of the weekly basis required by the CBA.  Defendant also does not deny that if the CBA was not applicable and this Court were to apply admiralty law, that Defendant would be entitled to rate of $53.50 a day.  Defendant argues only that the rate set forth in the CBA must be enforced and that failure to pay maintenance at the time required in the CBA does not mean that other provisions of the CBA are invalidated.  Defendant, without citing any law as to the issue or further expanding on its argument, also asserts that Plaintiff's remedy, if any, is to file a grievance under the CBA.

As set forth by Plaintiff, this Court cannot consider the admiralty law provisions unless Plaintiff has shown that the CBA terms are inapplicable due to a breach.  However, neither party has addressed the first issue that this Court must consider, which is – can Plaintiff bring suit against his employer for failure to make timely maintenance payments in breach of CBA provisions in federal court

6

without providing evidence that Plaintiff has exhausted the grievance procedure on this issue.  As set forth below, the answer to this question is no.

Both parties cite to <u>Gardiner v. Sea-Land Serv., Inc.</u>, 786 F.2d 943 (9th Cir. 1986), a Ninth Circuit case which held that the collectively bargained rate of $8.00 a day was binding on the seaman notwithstanding the district court's finding that the rate was inadequate to obtain food and lodging.  In that case, the Ninth Circuit noted that

> refusal to enforce the collectively-bargained maintenance rate would vitiate somewhat several of the policies underlying the federal labor laws[, such as] the policy of enforcing a collective bargaining agreement in order to promote stability in labor-management relations, the policy that the terms of agreements are to be determined by the free play of economic forces, [and] the principle of self-government by employees and the democratic process of union representation.

<u>Id.</u> at 947-48 (citations omitted).  The <u>Gardiner</u> case, however, does not answer the question of whether where the plaintiff is alleging a failure to make timely maintenance payments pursuant to the collective bargaining agreement, the plaintiff can bring such action in federal court without having exhausted the grievance procedures of a collective bargaining agreement.

Despite both parties' failure to address this key issue, this Court is well aware that although Section 301 of the Labor Management Relations Act

7

allows union employees to bring suit in federal court against employers, in general, the employee must exhaust the grievance procedures provided by the relevant collective bargaining agreement before bringing such action.  See Republic Steel Corp. v. Maddox, 379 U.S. 650 (1965); Vaca v. Sipes, 386 U.S. 171, 184 (1967); Camean v. F/V Lady Jay, 654 F. Supp. 709, 710 (D. Mass. 1985) ("under Section 301 of the LMRA, 29 U.S.C. § 185, a federal court does not have jurisdiction over an individual employee's action for breach of contract against his employer unless contractual remedies have been exhausted, or resort to those remedies would be futile because a union is unconscientious in its duties of representation.").  "[I]t is generally true . . . that when the employee's claim 'is based upon breach of the collective bargaining agreement, he is bound by terms of that agreement which govern the manner in which contractual rights may be enforced.'" U.S. Bulk Carriers, Inc. v. Arguelles, 400 U.S. 351, 352 (1971) (citation omitted).

There are some exceptions, however, to the exhaustion requirement. For example, "a seaman could sue in federal court for wages under 46 U.S.C.

§ 596³ without invoking grievance and arbitration procedures under a collective-bargaining agreement that provided for resolution of all disputes and grievances, not merely those based on alleged violations of the contract." Iowa Beef Packers, Inc. v. Thompson, 405 U.S. 228, 229 (1972) (citing Arguelles, 400 U.S. at 357) (finding that "Since the history of § 301 is silent on the abrogation of existing statutory remedies of seamen in the maritime field, we construe it to provide only an optional remedy to them.")). This exception to the exhaustion of remedies, however, is a narrow one, and applies only in cases where an alternate, independent remedy, outside of the terms of a collective bargaining agreement is available. See Cady v. Twin Rivers Towing Co., 486 F.2d 1335, 1338 (3rd Cir.

---

³ At the time of the holding in Arguelles, 46 U.S.C. § 596 provided in pertinent part:
> The master or owner of any vessel making coasting voyages shall pay to every seaman his wages within two days after the termination of the agreement under which he was shipped, or at the time such seaman is discharged, whichever first happens . . . and in all cases the seaman shall be entitled to be paid at the time of his discharge on account of wages a sum equal to one-third part of the balance due him. Every master or owner who refuses or neglects to make payment in the manner hereinbefore mentioned without sufficient cause shall pay to the seaman a sum equal to two days' pay for each and every day during which payment is delayed beyond the respective periods, which sum shall be recoverable as wages in any claim made before the court.

This section has been modified and is currently codified in 46 U.S.C. § 10313.

1973) ("The Court in <u>Arguelles</u> created a narrow exception to . . . the principle that where the terms of employment were governed by a collective bargaining agreement, an employee, before submitting his claims to court, must attempt the use of the contract grievance procedure . . . We are unable to discern in <u>Arguelles</u> any indication that the Court intended to create for seamen a broad exception to the principle . . . when . . . no alternate statutory remedy is available."); <u>see also</u> <u>Rothmann v. S/S President Taft</u>, No. C 94-2935 FMS, 1995 WL 458979, at *5 (N.D. CA. Nov. 14, 1994) ("The court in <u>Cady</u> did not hold that a seaman may bring an action for damages pursuant to section 301 for breach of the collective bargaining agreement."); <u>Camean</u>, 654 F. Supp. at 711 (the plaintiffs claims did "not present the type of seaman's claim for wages that was sanctioned by the Supreme Court in <u>Arguelles</u>. . . . [and] [t]herefore, <u>Arguelles</u> may not be interposed as a reason for circumventing the grievance and arbitration procedures set forth in an applicable collective bargaining agreement."); <u>Kowalik v. Gen. Marine Transp. Corp.</u>, 550 F.2d 770, 771-72 (2nd Cir. 1977) (a seaman could not avoid the requirement of exhaustion of remedies because his claim for overtime wages was not grounded in 46 U.S.C. § 596).[4]

---

[4] Another exception to the exhaustion requirement is where the employee can prove that the union as bargaining agent breached its duty of fair representation in
(continued...)

10

Here, Plaintiff has cited no independent, alternate statutory code or common law requiring that his maintenance be paid on a weekly basis, or be paid on a more frequent basis than he was paid. Additionally, neither party has provided this Court with a copy of the CBA, and therefore, this Court is unaware of the scope of the grievance procedures, if any. It is Plaintiff's burden to establish that this Court has jurisdiction over his claims. Having completely stylized his claim as one for failing to make timely payments as required by the CBA, failing to cite statutory or common law requiring maintenance payments to be made in a specific time frame, and having failed to allege that he exhausted his administrative remedies with respect to such claim, Plaintiff's motion for maintenance and cure based upon untimely payments of such, is denied without prejudice.

---

[4](...continued)
its handling of the employee's grievance. Vaca, 386 U.S. at 186. This does not apply here because Plaintiff has not alleged that he attempted to pursue the grievance procedure.

## CONCLUSION

For the reasons stated above, the Court DENIES Plaintiff's Motion to Compel Defendant IAS to Pay Adequate Maintenance and Cure WITHOUT PREJUDICE.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, May 6, 2008.

_____
David Alan Ezra
United States District Judge

Christopher Best vs. Pasha Hawaii Transport Lines, L.L.C., et al., CV No. 06-00634 DAE-KSC; ORDER DENIES PLAINTIFF'S MOTION TO COMPEL DEFENDANT IAS TO PAY ADEQUATE MAINTENANCE AND CURE WITHOUT PREJUDICE