IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| CHRISTOPHER BEST, | ) | CV. NO. 06-00634 DAE-KSC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| PASHA HAWAII TRANSPORT | ) | |
| LINES, L.L.C.; M/V JEAN ANNE, | ) | |
| AND INTEROCEAN AMERICAN | ) | |
| SHIPPING CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

On February 9, 2009, the Court heard Plaintiff's Motion. Kurt

Arnold, Esq., and Lawrence Kawasaki, Esq., appeared at the hearing on behalf of

Plaintiff; Cynthia A. Farias, Esq., appeared at the hearing on behalf of Defendant

Interocean American Shipping Corporation ("IAS") and Pasha Hawaii Transport

Lines, L.L.C. After reviewing the motion (Doc. # 111) and the supporting and

opposing memoranda, the Court GRANTS IN PART AND DENIES IN PART

Plaintiff's motion.

## BACKGROUND

It is undisputed that Plaintiff slipped and fell while working aboard the cargo sip M/V Jean Anne on April 18, 2006.  Plaintiff was employed at the time as Chief Mate by Defendant IAS, a company which provides crew services for Defendant Pasha Hawaii Transport lines, the owner of the M/V Jean Anne.  The Jean Anne is a roll-on/roll-off cargo vessel in excess of 100 gross tons.  The Jean Anne operates between California and Hawaii.

The issue presented by Plaintiff's motion is whether Defendants can be found liable for negligence per se because he was covered by a maximum work hour regulation and yet was required to work more than allowed by the regulation.  Defendants assert that the maximum work hour regulation does not apply to Plaintiff and that the only related regulation that applied was with respect to rest hours, which was met.

## I.    Plaintiff's Duties and Hours of Work and Rest

Plaintiff was a licensed individual and worked as Chief Mate.  As second in command of the vessel, Plaintiff's duties included overseeing cargo operations, security, training, morale, discipline, loading and unloading of cargo, and navigating the ship.  Plaintiff was one of three officers required to stand navigational watch.  Plaintiff's duties also included reviewing rest logs and making

2

sure the crew was in compliance, in addition to being responsible for his own rest hours.  Plaintiff was not closely supervised and was expected to know and comply with all applicable rules, including his own required rest periods. Plaintiff had discretion to assign tasks to other crew members.  However, the Captain was ultimately responsible for rest hours of all crew aboard the ship.

Plaintiff took notes during the day of what he needed to do and what he was doing for certain blocks of time.  Plaintiff normally filled out his Standards of Training and Certificate of Watch ("STCW") sheet at 4:00 a.m. when he went on his navigational watch with respect to the hours he worked and the hours he rested.

One of the masters of the Jean Anne, Gregory Johnson, testified that he discovered that Plaintiff had logged in work hours when he was not working and rest hours when he was not resting.  Johnson counseled Plaintiff on complying with the rest hour requirements and told him if he was going to exceed the hours to speak with Johnson, who would help him resolve the issue.  Plaintiff never told Johnson that he needed assistance or that he was going to exceed his working hours.  Johnson did not provide dates in which these counselings occurred.  In May 2005, it was noted that Plaintiff had not been completing his required STCW rest hour logs for his own hours.

3

The other master, Steve Bond, likewise testified that Plaintiff was counseled not to exceed his STCW hours several times.  Bond thought that Plaintiff would come to him when he was going to exceed his hours.  Bond did not provide dates in which these counselings occurred.

Plaintiff testified that he almost always worked more than his maximum work hours because he was not relieved and told not to assign others to ballasting.  Plaintiff also testified that he told Bond and/or Johnson that he was tired, or did not get a lot of rest.  Plaintiff's STCW logs indicate that in the 24 hours prior to the accident at issue, he worked 16 hours.  In the seven-day period prior to the injury, Plaintiff worked more than eight hours for each day.  Specifically, between 1:00 p.m. on April 16 to 1:00 p.m. April 17, Plaintiff worked 11 hours.  Plaintiff worked 14 hours during the previous 24-hour period.  Between 1:00 p.m. and 1:00 p.m. on April 14 to April 15, Plaintiff worked 10 hours.  Plaintiff worked 12 hours and 13 hours, respectively, in the next two preceding 24 hour periods.

Defendants did not contest these work hours and instead focused their opposition on Plaintiff's rest hours.  Plaintiff's STCW sheets indicate that in the 24-hour period prior to the accident, Plaintiff rested from 7:00 p.m. to 3:00 a.m., for a total of eight hours.  From 1:00 p.m on April 16 to 1:00 p.m. on April 17,

4

Plaintiff had 12 hours of rest, eight of which were in a row.  The week prior to the

accident, Plaintiff had 72 hours of rest.

II.    The Accident

The Jean Anne arrived in port in San Diego on the morning of April

18, 2006.  The Jean Anne was carrying a load of military vehicles and equipment,

including Blackhawk helicopters.

At approximately 1:00 p.m., Plaintiff was on deck talking with

Homeland Security Inspector, James Markley.  Plaintiff ducked underneath the tail

section of the helicopters as he crossed the deck.  While doing so, Markley asked

him a question, Plaintiff turned his head, and stepped on a loose lashing buckle that

should have been securing the helicopter.  Plaintiff fell onto his left leg and his

back and felt pain.  Plaintiff testified that he rested there for awhile.  Plaintiff also

testified that he was alert at the time of the accident but was not operating at

optimal levels.

Plaintiff stated that his leg was in pain and he informed his Captain

but he was nonetheless asked to continue working.  Bond recalls that Plaintiff told

him he slipped and fell and said he was okay.  Bond testified that Plaintiff did not

appear to be in pain.  Plaintiff testified that he did not request to get off the ship to

see a doctor.  Plaintiff worked for the next two weeks.  Plaintiff testified that he

was limping during this time.  Crewmembers testified that they do not recall seeing Plaintiff in pain.

Plaintiff testified that he had not seen any other loose lashing straps, it did not look to him as if cargo operations had commenced, and he had not given the order to unlash.  Markley testified that when he first boarded the vessel, the equipment was still lashed, but that unlashing occurred before Plaintiff's accident.

Plaintiff was terminated on May 16, 2006, for a matter unrelated to the accident.

III.   Procedural History

Plaintiff filed his complaint on November 2006, alleging Jones Act negligence and unseaworthiness.  Plaintiff filed the instant motion on December 3, 2008.  (Doc. # 111.)  Plaintiff seeks an order granting partial summary judgment on his Jones Act negligence claim, arguing that Defendants violated the Coast Guard regulations regarding the number of hours he is required to work.  As a result, Plaintiff states that he was not operating at optimal levels and this contributed to his injuries.  Plaintiff also seeks summary judgment on Defendants' defense of comparative negligence.

Defendants filed an opposition on January 22, 2009.  Plaintiff filed a reply brief on February 2, 2009.  After the hearing, this Court allowed the parties

to file supplemental briefs.  Defendants filed their brief on February 20, 2009, and

Plaintiff filed his brief on February 27, 2009.

## STANDARD OF REVIEW

Rule 56 requires summary judgment to be granted when "the

pleadings, the discovery and disclosure materials on file, and any affidavits show

that there is no genuine issue as to any material fact and that the movant is entitled

to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Porter v. Cal. Dep't

of Corrections, 419 F.3d 885, 891 (9th Cir. 2005); Addisu v. Fred Meyer, Inc., 198

F.3d 1130, 1134 (9th Cir. 2000).  A main purpose of summary judgment is to

dispose of factually unsupported claims and defenses.  Celotex Corp. v. Catrett,

477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to

demonstrate facts to establish what will be an essential element at trial.  See id. at

323.  A moving party without the ultimate burden of persuasion at trial -- usually,

but not always, the defendant -- has both the initial burden of production and the

ultimate burden of persuasion on a motion for summary judgment.  Nissan Fire &

Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden

initially falls upon the moving party to identify for the court those "portions of the

materials on file that it believes demonstrate the absence of any genuine issue of

material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d

626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

Once the moving party has carried its burden under Rule 56, the

nonmoving party "must set forth specific facts showing that there is a genuine

issue for trial" and may not rely on the mere allegations in the pleadings.  Porter,

419 F.3d  at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256

(1986)).  In setting forth "specific facts," the nonmoving party may not meet its

burden on a summary judgment motion by making general references to evidence

without page or line numbers.  S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885,

889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary

judgment, the court shall have no independent duty to search and consider any part

of the court record not otherwise referenced in the separate concise statements of

the parties.").  "[A]t least some 'significant probative evidence'" must be

produced.  T.W. Elec. Serv., 809 F.2d at 630  (quoting First Nat'l Bank of Ariz. v.

Cities Serv. Co., 391 U.S. 253, 290 (1968)).  "A scintilla of evidence or evidence

that is merely colorable or not significantly probative does not present a genuine

issue of material fact."  Addisu, 198 F.3d at 1134.

When "direct evidence" produced by the moving party conflicts with

"direct evidence" produced by the party opposing summary judgment, "the judge

must assume the truth of the evidence set forth by the nonmoving party with

respect to that fact." T.W. Elec. Serv., 809 F.2d at 631.  In other words, evidence

and inferences must be construed in the light most favorable to the nonmoving

party. Porter, 419 F.3d at 891.  The court does not make credibility determinations

or weigh conflicting evidence at the summary judgment stage. Id.  However,

inferences may be drawn from underlying facts not in dispute, as well as from

disputed facts that the judge is required to resolve in favor of the nonmoving party.

T.W. Elec. Serv., 809 F.2d at 631.

DISCUSSION

I.     Negligence Per Se Claim

            Plaintiff argues that he is entitled to recover under the Jones Act

because a violation of a Coast Guard regulation is negligence per se.  Plaintiff

argues that Defendants violated 46 U.S.C. section 8104(d) regarding the maximum

number of hours he could be required to work.

            "[T]he Jones Act impose[s] upon the employer the duty of paying

damages when injury to the worker is caused, in whole or in part, by the

employer's fault." Kernan v. Am. Dredging Co.  355 U.S. 426, 432 (1958).  "[A]n

employee is entitled to recover damages if the employer's negligence played any

part in producing the injury, no matter how slight." Oglesby v. S. Pac. Trans. Co.,

9

6 F.3d 603, 609 (1993) (internal quotation marks and citation omitted). "[U]nder the Jones Act, a violation of a statute or a Coast Guard regulation that causes the injury or death of an employee creates liability 'in the absence of any showing of negligence'." MacDonald v. Kahikolu Ltd., 442 F.3d 1199, 1203 (9th Cir. 2006). This right to recovery includes injuries caused by an employer's violation of a statutory duty or a Coast Guard safety regulation, without regard to the seaman's comparative fault, as long as the injury is attributable to the violation. Fuszek v. Royal King Fisheries, Inc., 98 F.3d 512, 517 (9th Cir. 1996) ("the seaman could have recovered in full (i.e., without any reduction for comparative fault) if he had been injured while at sea and his injuries had been due to negligence attributable to the violation of a Coast Guard regulation, . . . [therefore] the district court erred by reducing Fuszek's damage award for comparative negligence").

"[T]he general tort doctrine that an employer is liable for violation of 'a statutory duty only where the injury is one which the statute was designed to prevent' is inapplicable under the Jones Act." MacDonald, 442 F.3d at 1203 (quoting Kernan 355 U.S. at 432) (also noting that "under the Jones Act, the common-law concepts of foreseeability and risk of harm are not applicable where the employer violates a federal statute or a Coast Guard regulation, if such conduct in whole or in part caused injury").

10

Plaintiff argues that Defendants violated United States Code provisions and federal regulations by requiring him to work more than the hours allowed.  Plaintiff asserts that this led him to be working at less than optimal levels, which contributed to his slip and fall.  Finally, in a footnote, Plaintiff argues that this Court should adopt the holding in a Fifth Circuit case, which held that a finding of negligence per se shifts the burden of proving causation onto the defendants in a non-collision case.  See Reyes v. Vantage S.S. Co., Inc., 609 F.2d 140 (5th Cir. 1980).[1]

A.    Maximum Work Hours Versus Minimum Rest Hours

Defendants state that rather than 46 U.S.C. section 8104(d) regarding maximum work hours, 46 C.F.R. section 15.1111 regarding minimum rest hours, applies to Plaintiff.  That regulation provision provides

> (a) After January 31, 1997, each person assigned duty as
> officer in charge of a navigational or engineering watch,

---

[1] The Fifth Circuit in Reyes applied the rule announced in The Pennsylvania, 86 U.S. 125 (1873) to a case involving the death of a man overboard and rescue attempts.  The Fifth Circuit noted that courts sitting in admiralty apply this rule in cases that did not involve collisions.  In addition, the Fifth Circuit noted that in rescue-type cases "the shipowner is charged with the highest degree of diligence to save a seaman who has gone overboard" outside of any other regulations.  Reyes, 609 F.2d at 146. The court held that "such situations could be more equitably handled by placing the burden on the defendant to show not merely that his fault might not have been one of the causes of the drowning, or that it probably was not, but that it could not have been a contributory factor."  Id.

or duty as a rating forming part of a navigational or
engineering watch, on board any vessel that operates
beyond the Boundary Line shall receive a minimum of 10
hours of rest in any 24-hour period.
(b)The hours of rest required under paragraph (a) of this
section may be divided into no more than two periods, of
which one must be at least 6 hours in length.
(c) The requirements of paragraphs (a) and (b) of this
section need not be maintained in the case of an
emergency or drill or in other overriding operational
conditions.
(d) The minimum period of 10 hours of rest required
under paragraph (a) of this section may be reduced to not
less than 6 consecutive hours as long as--
(1) No reduction extends beyond 2 days; and
(2) Not less than 70 hours of rest are provided each 7-day
period.

Defendants argue that the minimum rest periods requirement trumps

the maximum work hour requirement and that Plaintiff cannot prove a violation of

the minimum rest period requirement.  In his reply brief, Plaintiff argues that the

existence of a minimum rest period provision does not mean that the maximum

work hour provision does not likewise apply.  This Court agrees.

In its summarized public comments regarding the interaction of the

minimum rest hours and the maximum work hours regulations, the Coast Guard

stated as follows:

One comment expressed support for the rule on rest
periods, and noted that requiring minimum and
continuous rest periods may reduce fatigue, and may lead

12

> to a decrease in the risk of marine accidents caused by
> this significant problem.
>
>       \*      \*      \*
>
> . . . this comment sought clarification of the relationship
> between U.S. law and STCW, and asked which takes
> precedence where they appear to be incompatible.
> Another comment raised a similar concern, stating that
> the minimum rest period of 10 hours a day under STCW
> may be viewed as promoting 14- hour workdays for
> lower-level mariners in violation of domestic law. The
> Coast Guard contends that the <u>treatment of work hours in
> 46 U.S.C. 8104, and that of rest hours in STCW, enjoy
> equal legal status: that neither takes precedence over the
> other as a matter of law</u>. As it noted in the preamble to
> the NPRM (61 FR 13297, column 3, and 13298, column
> 1), the Coast Guard considers the two provisions
> compatible. Both may be implemented without casing
> conflict to the other. <u>In any specific set of circumstances,
> the stricter rule applies</u>.

62 Fed. Reg. 34506, 34518.  Therefore, the minimum rest hour requirement would

not trump the maximum work hour requirement.

However, there is still the question of whether the maximum work

hour requirement applied to Plaintiff.  Defendants argue that the eight-hour

provision applies only to those who are in the deck or engine departments.  Neither

Plaintiff nor Defendants provide any law or analysis supporting their argument

whether or not the maximum eight-hour work provision applies only to those who

work on deck or in the engine departments.  Despite a sweeping search, this Court

could not find any cases or federal regulations on point discussing the relevant

language of 46 U.S.C. section 8104(d).

   46 U.S.C. section 8104(d) provides that

> the licensed individuals, . . . shall be divided, when at
> sea, into at least 3 watches, and shall be kept on duty
> successively to perform ordinary work incident to the
> operation and management of the vessel. . . . A licensed
> individual or seaman in the deck or engine department
> may not be required to work more than 8 hours in one
> day.[2]

Because there is no law on point, this Court will employ the cannons of statutory

construction.

---

[2] 46 U.S.C. § 8104(d) provides in its entirety as follows:
On a merchant vessel of more than 100 gross tons as measured under
section 14502 of this title, or an alternate tonnage measured under
section 14302 of this title as prescribed by the Secretary under section
14104 of this title (except a vessel only operating on rivers, harbors,
lakes (except the Great Lakes), bays, sounds, bayous, and canals, a
fishing, fish tender, or whaling vessel, a fish processing vessel of not
more than 5,000 gross tons as measured under section 14502 of this
title, or an alternate tonnage measured under section 14302 of this title
as prescribed by the Secretary under section 14104 of this title, yacht,
or vessel engaged in salvage operations), the licensed individuals,
sailors, coal passers, firemen, oilers, and water tenders shall be
divided, when at sea, into at least 3 watches, and shall be kept on duty
successively to perform ordinary work incident to the operation and
management of the vessel. The requirement of this subsection applies
to radio officers only when at least 3 radio officers are employed. A
licensed individual or seaman in the deck or engine department may
not be required to work more than 8 hours in one day.

When construing a statute, the court must first "determine whether the language at issue has a plain and unambiguous meaning." Robinson v. Shell Oil Co., 519 U.S. 337, 340 (1997). In making this determination, the court should refer "to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." Id. at 341. The court should also adhere to the paradigm of a statute "as a symmetrical and coherent regulatory scheme[.]" Gustafson v. Alloyd Co., 513 U.S. 561, 569 (1995). If the language is plain and "the statutory scheme is coherent and consistent," the court need not inquire further. United States v. Ron Pair Enters., Inc., 489 U.S. 235, 240-41 (1989). A statute is ambiguous where it "could just as easily be read to" have one meaning as another. Robinson, 519 U.S. at 342.

Here, the context in which the language is used in the subsection of the statute and in the statute as a whole does not provide insight into whether all licensed individuals are subjected to the maximum work hours or only those who work in a specific department. For example, the statute provides that the licensed individuals and others must be divided into at least three watches. If a 24-hour watch period were divided into only three watches, each watch would equal eight hours per watch. The subsection also provides that in addition to performing watch duty, the various types of individuals listed "shall be kept on duty

15

successively to perform ordinary work incident to the operation and management

of the vessel." 46 U.S.C. § 8104(d) . The final sentence of the section, however,

limits the total number of hours, whether watch hours or non-watch hours, to eight

hours a day for a "licensed individual or seaman in the deck or engine department."

Id. In other words, of all the various individuals who could be assigned watch

duty, those "licensed individual[s] or seaman in the deck or engine department"

may not be required to work more than eight hours maximum. Accordingly, if a

ship wants "licensed individual[s] or seaman in the deck or engine department" to

work more than eight hours total, the ship should have more than three watches.

This, however, does not answer the ultimate question of whether the

eight hour maximum applies to all licensed individuals or only those licensed

individuals who work in a deck or engine department. A plain reading of the

language of the statute lends itself to either interpretation and is therefore

ambiguous.

"If the statutory language is ambiguous, [courts] look beyond the

language of the statute to the legislative history for guidance." Chevron U.S.A.,

Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842 (1984).

Neither party provided any information as to legislative history or purpose of this

work limitation and whether there would be a reason to differentiate between

licensed individuals working in different departments or whether the intent is only

to differentiate by department for lower-level seamen.

In addition, neither party provided much information regarding

industry standards or understanding.  For example, neither party explained the

reason or policy behind limiting work hours only for those who work in specific

departments but not limiting work hours for those in command of the ship or

second in command of the ship.  Defendants did produce the "Amendments to the

Annex to the International Convention on Standards of Training, Certification and

Watchkeeping for Seafarers" as Exhibit A to their supplemental brief.  This

document provides definitions of Masters, Officers, Deck Officers, Engineer

Officer, and Chief Mate.  This document indicates that there are licensed

individuals assigned to different departments and other licensed individuals, who

are those in command of the ship.  However, it does not aid this Court in

determining how the statute should be interpreted.

As the statute is open to either interpretation argued by the parties,

Plaintiff as the moving party with the ultimate burden of persuasion, has not

established as a matter of law that as Chief Mate aboard the Jean Anne he could

not be required to work more than eight hours a day.   Plaintiff presented no

evidence regarding the assignments of licensed persons in general, whether there

are different departments on the Jean Anne, and whether there is a reason to differentiate between those who work in a deck and engine department and those who do not.

Moreover, Defendants presented evidence which creates a genuine issue of fact of whether this work limitation applies to Plaintiff. Specifically, Defendants provided a copy of the Collective Bargaining Agreement ("CBA") and a Memorandum of Understanding with respect to the Jean Anne. The Memorandum of Understanding allegedly deleted the eight-hour work day requirement and overtime pay set forth in the CBA and replaced it with a flat rate salary. Defendants claim that the parties understood that an officer would regularly work more than eight hours a day.[3]

Accordingly, as Plaintiff is the moving party with the ultimate burden of persuasion, this Court cannot grant his negligence per se claim because there are questions of fact as to whether the eight-hour limit applied to Plaintiff.

---

[3] Plaintiff counters that the Memorandum of Understanding expressly states that the hours of work and overtime provisions of the Car/Carrier Agreement do not apply with respect to the Jean Anne and thus, do not apply to him. Although it is unclear whether the reference to the Car/Carrier Agreement in the Memorandum of Understanding is a reference to the CBA, the documents provided by Defendants are sufficient to create an issue of fact of whether pursuant to the CBA and Memorandum of Understanding, Plaintiff, as Chief Mate, was expected to and understood that he would work more than eight hours a day.

B.   Causation

Plaintiff next argues that once he has proven negligence per se, it is not his burden to prove causation and instead, this Court should apply the Pennsylvania rule and require Defendants to prove no possible causation.

In Stark v. Totem Ocean Trailer Express, Inc., et al., No. C05-5808RBL, 2007 WL 201059 (W.D. Wash. Jan. 24, 2007), the court decided a nearly identical case filed against what appears to be one of the Defendants in the instant case, Interocean American Shipping Corporation, based upon a violation of the minimum rest period for an officer.  In Stark, the plaintiff was the Chief Officer on board the vessel and was in charge of his own work hours and those of others. The plaintiff injured his leg when he was struck by rear tires of a cargo trailer, which was being operated by an employee of another defendant.  The plaintiff was talking on a vessel phone at the time.  Because the area around the phone was protected, the plaintiff's leg must have been outside the protective area for it to be struck.  Although the plaintiff had not received the statutorily mandated amount of rest during many days of his 10-week duty tour, he was not tired or inattentive, he felt good, and did not have trouble concentrating.

The plaintiff and one defendant moved for partial summary judgment on a negligence per se claim.  The court noted that because the ten-hour minimum

19

rest period provision in 46 C. F.R. 15.1111(b) had been violated, "[n]egligence per se ha[d] likely been established, but absent a showing of causation for Plaintiff's injury, the breach of this regulation will not give rise to liability per se." Id. at *2. The court found that "preventing fatigue is the logical purpose of the rule." Id. However, the court found that a genuine issue of fact remained as to whether fatigue played a role in plaintiff's injury because he testified that he was not tired or inattentive, contrary to the expert's testimony. Id.

The plaintiff in Stark also argued that the court should apply the Pennsylvania rule, which shifts the burden of proving causation to the defendants. In The Pennsylvania, 86 U.S. 125 (1873), the court held that in a case involving a collision, the burden is on a ship in violation of a safety statute to show "not merely that her fault might not have been one of the causes, or that it probably was not, but that it could not have been." Pennsylvania, 86 U.S. at 136.  The court in Stark, noted that "[t]he Ninth Circuit, however, 'applies the Pennsylvania rule strictly.'  The vast majority of Ninth Circuit cases applying The Pennsylvania Rule do so in the context of a collision." Stark, 2007 WL 201059 at *3 & n. 1 (citing Waterman Steamship Corp. v. Gay Cottons, 414 F.2d 724 (9th Cir. 1969) (this case

involved cargo damage arising out of a vessel stranding).[4]  The court further noted that "[b]ecause of the almost insurmountable burden The Pennsylvania Rule imposes upon the violating party, many courts have required a nexus between the injury and the purpose of the legal obligation that was breached."  Id. at *3.

Relying on Wills v. Amereda Hess Corp., 379 F.3d 32, 43 (2nd Cir. 2004), which declined to apply The Pennsylvania Rule in a Jones Act case involving the alleged violation of an excessive work regulation, the court in Stark likewise rejected application of The Pennsylvania Rule because there was not a nexus between plaintiff's leg injury and a violation of 46 CFR 15.1111(b).  Id.  The court so held because

> [a]lthough an inference is justified that the excessive work required of Plaintiff caused him to be fatigued, that inference is not exchangeable for a presumption that excessive work caused his leg injury. Moreover, the statutory and regulatory exceptions from the disallowance of overtime work specifically authorize excessive work hours during tense and pressure-filled emergencies. See 46 U.S.C. 8104; 46 CFR 15.1111. Therefore, the statute and regulation are in contradiction

---

[4] See also States Steamship Co. v. Permanente Steamship Corp., 231 F.2d 82 (9th Cir. 1956) (involved a collision); The Denali, 105 F.2d 413 (9th Cir. 1939) (involved a stranding); The Princess Sophia, 61 F.2d 339 (9th Cir. 1932) (involved a stranding).

with the view that any overtime work leads naturally and
logically to physical injury of the employee.

Id.

Thus, the court could not find as a matter of law that the breach of an

excessive work regulation leads "naturally and logically" to the plaintiff's leg

injury.  Therefore, the burden of causation remained on the plaintiff, although not a

difficult one.  Id.

This Court finds the reasoning in the Stark case to be persuasive.

This Court likewise finds that even if Plaintiff could show that the eight-hour work

limitation applied to him, a violation of that limitation did not naturally and

logically lead to Plaintiff's injury because Plaintiff testified that he was alert.

In addition, there are questions of fact as to whether Plaintiff's back

was injured in the fall.  There is contradictory evidence regarding whether Plaintiff

was in pain, sought medical attention or treatment, and/or let anyone know he was

in pain while he continued working over the next two weeks.  Other than an

operative report regarding Plaintiff's back surgery on April 11, 2008, which  stated

a diagnoses of degenerative disk disease and spinal stenosis,  Plaintiff presented no

medical evidence regarding the cause of his back injury, when his back pain began,

or any other evidence linking the need for back surgery to his slip and fall two
years earlier.

Therefore, this court cannot hold as a matter of law that there is a
nexus between Plaintiff's alleged injury and the violation of the statute (if any)
such that the Pennsylvania rule applies.  See Clark v. Icicle Seafoods, Inc., No.
C06-25Z, 2007 WL 3474266, at *8 (W.D. Nov. 14, 2007) (declining to apply the
Pennsylvania rule and requiring the plaintiff to prove causation for an injury
suffered "while working as a processor, loading and unloading fish product into the
blast freezer tunnel of the ARCTIC STAR" based on defendant's failure to file
Coast Guard accident reports relating to the prior injury accidents); see also
MacDonald v. Kahikolu, Ltd., Civil No. 02-00084, 2007 WL 4547552, at *6 (D.
Haw. Dec. 26, 2007) (declining to apply the Pennsylvania rule in a non-collision
Jones Act case because "the regulation that Defendant violated had nothing to do
with avoiding collisions or even the navigation of a vessel [and] . . . there is simply
no nexus between the violation complained of and the injury suffered by
Plaintiff"); Mathes v. The Clipper Fleet, 774 F.2d 980, 983 (9th Cir. 1985) (the
Pennsylvania rule in a non-collision Jones Act case did not apply to injury
sustained when the plaintiff's foot was caught between two vessels during cargo
transfer operation because a deckhand's violation of a coast guard rule requiring

23

local endorsement credentials to be physically aboard the ship was not causally connected to the rule violation).

Accordingly, for all the above reasons, Plaintiff's motion for summary judgment on his negligence per se claim is DENIED.

II.    <u>Comparative Fault</u>

Plaintiff also moves for summary judgment on Defendants' defense of comparative fault.  Although Defendants presented facts regarding comparative fault, Defendants did not address this argument in their opposition.

The law in the Ninth Circuit is clear that a seaman can recover in full, without any reduction for comparative fault, if he was injured while at sea and his injuries are due to negligence attributable to the violation of a statute or Coast Guard safety regulation.  <u>Fuszek</u>, 98 F.3d at 517; <u>MacDonald</u>, 442 F.3d at 1202 ("a seaman whose injuries were caused by a violation of a statute or a safety regulation could recover damages under the Jones Act, and this recovery could not be reduced under the comparative fault defense").

For these reasons, Defendants cannot raise a defense of comparative fault.

24

CONCLUSION

For the reasons stated above, the Court GRANTS IN PART AND

DENIES IN PART Plaintiff's Motion.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, March 6, 2009.



_____
David Alan Ezra
United States District Judge


Christopher Best vs. Pasha Hawaii Transport Lines, L.L.C., et al., CV No. 06-00634 DAE-KSC; ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT